UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 09-60744-CIV-HUCK/O'SULLIVAN

RICHARD C. ANDERSON

    Plaintiff

v.

JANET NAPOLITANO, Secretary,
Department of Homeland Security,

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court upon Defendant's Motion for Summary Judgment (D.E. #29) and Memorandum in Support (D.E. #30), filed December 11, 2009. Richard Anderson, a homosexual and a former Federal Air Marshal, is suing Janet Napolitano in her official capacity as Secretary of the Department of Homeland Security. Anderson's Amended Complaint brings claims under Title VII of the Civil Rights Act of 1964 for (1) sex discrimination on the basis of gender stereotyping and (2) retaliation for involvement in protected EEO activity. For the reasons below, the Court finds that Anderson cannot, as a matter of law, prove either of his claims, and grants Defendant's Motion for Summary Judgment.

**I.  BACKGROUND**

    **A.  Discrimination and Harassment**

Anderson began working as a Federal Air Marshal in 2000. In late 2001, he was promoted to Supervisory Federal Air Marshal and transferred to the newly established Miami Field Office. Anderson alleges that he began to suffer discrimination and harassment due to his sexual orientation shortly after he began working in the Miami Field Office. (*See* Am. Compl. ¶ 5 (alleging that the Miami Field Office's acting-Special Agent in Charge "learned of Anderson's sexual orientation a few days after Anderson reported for duty" and "immediately began to shun and isolated him within the office").) Anderson further alleges that, over the next several years, he was subjected to various instances of discrimination and harassment. (*See, e.g.*,

Am. Compl. ¶ 6 (alleging that the acting-Special Agent in Charge was publicly referring to Anderson as a "fag" and encouraging coworkers not to associate with him); Am. Compl. ¶ 7 (alleging that "someone in the MIA-FO had written the word 'Fag' on a grease board next to Anderson's office"); Am. Compl. ¶ 12 (alleging that one of Anderson's coworkers "had been informed via upper management that he was not to socialize with Anderson if he 'knew what was good for him and his career,' and the reason given was Anderson's sexuality"); Am. Compl. ¶ 21 (alleging that one of his coworkers had been told not to socialize with him "at the risk of career suicide"); *see generally* Am. Compl. ¶¶ 5-28; D.E. #30 Ex. 1; D.E. #32 Ex. A.)

One instance of harassment began when Special Agent in Charge James Bauer allegedly denounced Anderson for bringing to his attention subordinate employees' complaints of racial discrimination. During the ensuing conversation, Bauer allegedly told Anderson, "It's my perception, and I could be wrong—that because you're gay you're super sensitive to issues of discrimination." When Anderson denied this characterization, Bauer allegedly told Anderson, "You're too gay. You're too flamboyant. You're too 'in your face' around other [Federal Air Marshals]." Then, when Anderson asked for clarification, Bauer allegedly replied that he had received complaints that Anderson acted inappropriately around some of the Federal Air Marshals. Anderson said that if he was with peers in a social setting, and a man made a comment about a woman he found attractive, Anderson thought he was entitled to let them know when he saw someone he found attractive. Bauer allegedly responded, "No. That's 'in your face' behavior' and too flamboyant. You are not entitled to equal time." (Am. Compl. ¶¶ 17-18.)

In another incident, two of Anderson's coworkers allegedly entered the Miami Field Office Operations Room, lisping and saying in a "stereotypically flamboyant voice, 'Oh my God, we've got to clean up in here now.'" When they saw Anderson, however, they immediately stopped talking. (Am. Compl. ¶ 20.)

### B. EEOC Proceeding and Retaliation Claim

Anderson sought EEO counseling in July 2006 as a result of this alleged discrimination and harassment. On December 19, 2006, Anderson filed a formal EEO complaint alleging discrimination on the basis of sexual orientation. (D.E. #30 Ex. 1.)

Anderson amended his EEO complaint twice to add various claims of discrimination on the basis of retaliation for his prior EEO activity. (D.E. #30 Ex. 3.) Relevant to this lawsuit,

Anderson filed an amendment to his EEO complaint on January 9, 2008 to claim that he was charged with being absent without leave in retaliation for his prior EEO activity.[1] (D.E. #30 Ex. 3 at 9.) The retaliation claim resulted from an incident on December 17, 2007 when Anderson left work early without telling his immediate supervisor, Assistant Special Agent in Charge Abel Reynoso. Although the official hours for Anderson's position are 8:30 a.m. to 5:00 p.m. (*see* D.E. #30 Ex. 7 at 3), Anderson worked from 6:15 a.m. to 3:00 p.m. (*see* D.E. #30 Ex. 9 at 4-5).[2] Reynoso and Special Agent in Charge Bauer drove to Anderson's house and saw him in front of his house at approximately 4:00 p.m. (D.E. #32 Ex. B at 7.) Subsequently, Reynoso asked Anderson to submit a request for two hours of sick leave. Anderson did so under protest, arguing that Reynoso knew Anderson had already worked nine hours that day. (Am. Compl. ¶ 46.) A few days later, on December 21, 2007, Bauer amended Anderson's attendance and leave record to reflect a two-hour period of being AWOL. (D.E. #30 Ex. 9 at 19.) When Anderson filed his January 9, 2008 amendment to his EEO complaint, he alleged that this AWOL charge was in retaliation for his prior EEO activity.

On July 16, 2008, an ALJ at the EEOC dismissed Anderson's claim of sexual orientation discrimination because it is not recognized as a federal cause of action. (*See* D.E. #30 Ex. 4 at 2.) The ALJ allowed Anderson's retaliation claims to proceed. However, on January 30, 2009, the ALJ issued an order denying those claims, too, and entered judgment in favor of the Department of Homeland Security. (*See* D.E. #30 Ex. 5.) On February 23, 2009, the ALJ issued an Order Entering Judgment that advised Anderson of his right to file a civil action in a U.S. district court within 90 days. (*See* D.E. #22 Ex. 2 at 6.) Anderson timely sought review of his EEOC proceeding by filing this lawsuit.

### C. Demotion, MSPB Proceeding, and Retirement

Also important to know as a backdrop, effective August 3, 2008, Anderson was demoted from Supervisory Federal Air Marshal (GS-14 equivalent) to Federal Air Marshal (GS-13 equivalent) and suffered a reduction in pay. (D.E. #30 Ex. 6 at 2.) Special Agent in Charge

---

[1] In the Amended Complaint, Anderson indicates that he was charged with being AWOL *after* amending his EEO complaint to claim retaliation. (*See* Am. Compl. ¶ 47.) However, this is clearly inaccurate: Anderson was charged with being AWOL on December 21, 2007, almost three weeks *before* he sought to amend his EEO complaint. (*See, e.g.*, D.E. #30 Ex. 3 at 9; D.E. #30 Ex. 9 at 19.)

[2] There is evidence in the record indicating that Anderson believed he was allowed to adjust his hours based on need and that he could, and often did, leave at 3 p.m. (*See, e.g.*, D.E. #30 Ex. 9 at 4; D.E. #30 Ex. 10 at 3.)

Bauer had recommended that Anderson be demoted in June or July 2008.  (*See* D.E. #30 Ex. 10 at 2; D.E. #30 Ex. 8 at 17.)  Based on Bauer's recommendation, Anderson was charged with "lack of candor, failure to follow instructions, and absence without leave (AWOL)." (D.E. #30 Ex. 6 at 2.)

The failure-to-follow-instructions and AWOL charges both resulted from the December 17, 2007 incident in which Anderson left work two hours early.  The lack-of-candor charge, however, resulted from a separate incident.  On November 21, 2007, the day before Thanksgiving, Bauer saw Anderson at the Miami Field Office and was surprised that he was not at the Miami Airport.  When Bauer asked Anderson if he had gone to the airport that day, Anderson falsely stated that he had.  (*See* D.E. #30 Ex. 6 at 2-3; D.E. #30 Ex. 10 at 2.)  Bauer eventually found out that Anderson had not gone to the airport.  Later, in response to his proposed demotion and reduction in pay, Anderson accepted responsibility for the incident.  (*See* D.E. #30 Ex. 10 at 2 ("As for the first reason given, lack of candor, I accept responsibility.  I offer no excuse.").)

The day after his demotion, Anderson filed an appeal with the Merit Systems Protection Board ("MSPB").  Anderson alleged that he was demoted "in retaliation for having filed an EEO complaint alleging sexual orientation discrimination." (D.E. #30 Ex. 6 at 8.)  The MSPB affirmed Anderson's demotion on November 25, 2008.  (D.E. #30 Ex. 6 at 2.)  The decision became final on December 30, 2008, and Anderson had 30 days to ask for judicial review by filing a civil action in a U.S. district court.  (*See id.* at 14, 16.)  Anderson did not challenge the MPSB decision.

In February 2009, Anderson retired from the Department of Homeland Security on medical disability.  (*See* Am. Compl. ¶ 32.)  As a result of Anderson's demotion and reduction in pay, his medical disability retirement payments are calculated based on a lower salary.

### D.     Procedural History

Anderson initiated this lawsuit by filing a *pro se* complaint on May 19, 2009.  On August 27, 2009, Defendant filed a Motion to Dismiss.  In October 2009, Anderson obtained counsel to represent him in the case.  On November 23, 2009, the Court held a hearing on Defendant's Motion to Dismiss.  At the hearing, the Court discussed defects in Anderson's Complaint.  The Court subsequently granted Anderson leave to file an amended complaint.  (D.E. #26.)

4

Anderson filed his Amended Complaint (D.E. #28) on December 7, 2009. The Amended Complaint contains two counts: one for sex discrimination on the basis of gender stereotyping, and one for retaliation on the basis of Anderson's involvement in protected EEO activity.

On December 11, 2009, Defendant filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (D.E. #29) and a Memorandum in Support (D.E. #30). After Anderson filed his Response (D.E. #32), the Court entered an Order (D.E. #33) denying the Motion to Dismiss and ordering that the Motion proceed on the basis of summary judgment. The Court also permitted the parties to file additional supporting documents if they believed they were necessary for the Court to decide the Motion for Summary Judgment, but neither did so.

## II.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen*, 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party, and determine whether that evidence could reasonably sustain a jury verdict. *Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646.

While the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252. A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative is not enough. *Id.*; *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

5

### B. Anderson Cannot Prove His Title VII Claim for Sex Discrimination Claim Based on Gender Stereotyping.

Count I of the Amended Complaint alleges that Defendant violated Title VII by discriminating against and harassing Anderson because of his failure, as a homosexual, to conform to male stereotypes. Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The law is clear that Title VII does not prohibit discrimination based on sexual orientation. *See, e.g.*, *Simonton v. Runyon*, 232 F.3d 33, 35 (2d Cir. 2000) ("The law is well-settled in this circuit and in all others to have reached the question that . . . Title VII does not prohibit harassment or discrimination because of sexual orientation."). However, a plaintiff can state a Title VII claim for sex or gender stereotyping—a type of sex discrimination based on a person's failure to comply with gender stereotypes.

Gender stereotyping has been cognizable under Title VII since the Supreme Court's decision in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), a case in which a woman was denied partnership in an accounting firm because she did not behave in a feminine manner. *Same-sex* gender stereotyping appears to have been recognized by some courts since at least 1997. *See Doe v. City of Belleville*, 119 F.3d 563, 580-83 (7th Cir. 1997) (holding that there was sufficient evidence to support a finding of sex discrimination where male coworkers who harassed a young man were motivated by a belief that he was not sufficiently masculine because he wore an earring). Courts have since recognized that a gay man can bring a claim for sex discrimination under Title VII if he alleges that he suffered harassment based on exhibiting female characteristics. *See, e.g.*, *Prowel v. Wise Business Forms, Inc.*, 579 F.3d 285, 290-92 (3d Cir. 2009) (reversing a district court's grant of summary judgment in favor of the defendant because the plaintiff, an effeminate homosexual man, had adduced sufficient evidence to create a question of fact on whether he was harassed for failure to conform to gender stereotypes); *Mowery v. Escambia County Utils. Auth.*, No. 3:04-CV-382, 2006 WL 327965, at *6 (N.D. Fla. Feb. 10, 2006) ("Applying [the analysis from *Price Waterhouse v. Hopkins*], a claim under Title VII could be stated if [the plaintiff, a gay man,] was able to show that the harassment he suffered was based on his perceived failure to conform to a masculine gender role.").

Throughout Anderson's EEOC proceeding, and in his original Complaint, he alleged that he was the victim of sexual orientation discrimination. Now, for the first time, however, Anderson tries to state a claim of sex discrimination based on gender stereotyping. Specifically,

Anderson alleges that Defendant "undertook a campaign of harassment and discrimination" against Anderson "because it perceived Plaintiff, as a homosexual, to be a man who did not conform with gender stereotypes associated with men in our society." (Am. Compl. ¶¶ 37-38.)

Defendant argues that, although Anderson has tried to recast his claim as one of sex discrimination based on gender stereotyping, the Amended Complaint still consists of claims for sexual orientation discrimination. According to Defendant, Anderson is impermissibly trying to "'place his own interpretive spin' on his alleged 'harassment and classify it as harassment based on sex or gender rather than as harassment based on sexual orientation' . . . when the examples of harassment 'offered by Anderson, on their face, were comments that unequivocally related to Anderson's perceived sexual orientation.'" (Reply at 3 (quoting *Mowery v. Escambia County Utils. Auth.*, No. 3:04-CV-382, 2006 WL 327965, 2006 WL 327965, at *10 (N.D. Fla. Feb. 10, 2006)) (internal alterations omitted)). Defendant argues, therefore, that Anderson's claim should be dismissed.

Anderson responds that the Amended Complaint contains allegations that show both sexual orientation discrimination *and* discrimination based on gender stereotyping. Anderson argues that a claim cannot be dismissed if it contains elements of both types of discrimination. *See Prowel*, 579 F.3d at 292 (finding that where evidence of harassment could plausibly be interpreted as being based on both sexual orientation and failure to conform to gender stereotypes, there was a question of fact for the jury). According to Anderson, because his allegations include instances of gender stereotyping, his claim should not be dismissed.

Although Anderson is correct that his claim should not be dismissed if his allegations show both types of discrimination, the Court finds that Anderson's allegations do *not* include instances of harassment based on gender stereotyping. Rather, his allegations consist *solely* of instances of harassment and discrimination based on his sexual orientation. A look at *Prowel* shows the types of allegations that may suffice for a gay man to state a claim for gender stereotyping—and that are lacking from Anderson's allegations. The plaintiff in *Prowel*, a gay man, identified himself as effeminate and alleged that his coworkers discriminated against him because of his mannerisms. Specifically, the plaintiff had a high voice and walked in an effeminate manner, and unlike his typical male coworker, he "did not curse and was very well-groomed; filed his nails instead of ripping them off with a utility knife; crossed his legs and had a tendency to shake his foot 'the way a woman would sit'[;] discussed things like art, music,

interior design, and decor, and pushed the buttons on [a machine that he operated] with 'pizzazz.'" *Id.* at 291. The plaintiff further alleged that his coworkers made several comments about his effeminate traits, such as, "'Did you see what [the plaintiff] was wearing?'; 'Did you see [the plaintiff] sitting there with his legs crossed, filing his nails?'; and 'Look at the way he walks.'" *Id.* at 291-92. The Third Circuit found that the record was sufficient to create a jury question as to whether the plaintiff was harassed for failure to conform to gender stereotypes. Anderson, however, has not included allegations similar to those in *Prowel*.

In an attempt to show that the Amended Complaint contains allegations of harassment based on gender stereotyping, Anderson points to just two instances of alleged harassment. (*See* Response at 8.) First, Anderson points to the conversation with Special Agent in Charge Bauer in which he said Anderson was "too gay" and "too flamboyant." Anderson argues that these comments attribute "images and characteristics of effeminate behavior to [him]." (Response at 8.) Read in context, however, it is clear that the comments related only to Anderson's sexual orientation. The conversation focused on Anderson's sexual orientation. For example, Bauer had previously said, "It's my perception, and I could be wrong—that because you're gay you're super sensitive to issues of discrimination." (Am. Compl. ¶ 17.) And when Anderson told Bauer that he thought he was entitled to let coworkers know when he saw a man he found attractive, Bauer responded, "No. That's 'in your face behavior' and too flamboyant." (Am. Compl. ¶ 18.) The allegations show that Bauer used the term "flamboyant" to indicate behavior associated with a gay man, not behavior associated with a woman. Bauer did not make the alleged comments "because of sex," *Prowel*, 579 F.3d at 292, but because of Anderson's sexual orientation.

Second, Anderson points to the incident in which two of his coworkers were allegedly lisping and talking in a "stereotypically flamboyant voice," but then stopped when they saw Anderson. (Am. Compl. ¶ 20.) However, there is no indication—either in the Amended Complaint or in Anderson's EEOC proceedings—that Anderson speaks with a lisp or has a "flamboyant voice." Without any indication that Anderson has an effeminate voice, there is no reason to think that his coworkers were imitating or making fun of him. Even if they were, the logical conclusion is that his coworkers were lisping because of the stereotype that gay men speak with a lisp. Lisping is not a stereotype associated with women. Thus, again, the coworkers' actions were not "because of sex," but because of Anderson's sexual orientation.

Anderson's allegations in the Amended Complaint even contradict the claim that his coworkers harassed him because he did not comply with male stereotypes. Anderson alleges that the Miami Field Office's acting-Special Agent in Charge "began to shun and isolate[] him" immediately after learning of his sexual orientation. (Am. Compl. ¶ 5; *see also id.* ¶ 37 (alleging that soon after learning of Anderson's sexual orientation, Defendant "undertook a campaign of harassment and discrimination because Plaintiff failed to meet Defendant's sex stereotypes for men").) This implies that Anderson's coworkers had a problem with his sexual orientation and not with any effeminate characteristics Anderson might exhibit.

Finally, the Court notes that some of Anderson's statements in the Amended Complaint indicate a misunderstanding of gender stereotyping as it relates to homosexuals. Anderson states that he was harassed because his coworkers "perceived Plaintiff, as a homosexual, to be a man who did not conform with gender stereotypes associated with men in our society." Anderson seems to imply that all gay men fail to comply with male stereotypes simply because they are gay. However, that would mean "that every case of sexual orientation discrimination [would] translate into a triable case of gender stereotyping discrimination, which would contradict Congress's decision not to make sexual orientation discrimination cognizable under Title VII." *Prowel*, 579 F.3d at 292.

Anderson has not presented sufficient allegations or evidence to support a claim of sex discrimination based on gender stereotyping. Accordingly, Defendant's motion for summary judgment must be granted as to Anderson's sex discrimination claim.[3]

---

[3] Defendant also argues that, even if the Court finds that Anderson has alleged harassment based on gender stereotyping, it is too late for him to bring the claim because he has not properly exhausted his administrative remedies on the new claim.

A plaintiff must exhaust his administrative remedies before bringing suit under Title VII. *Wu v. Thomas*, 863 F.3d 1543, 1547 (11th Cir. 1989). This does not necessarily mean a plaintiff is barred from including any allegations in his judicial complaint that were not in his EEOC complaint. Rather, "[a] plaintiff's [Title VII] judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994). "As long as allegations in the judicial complaint and proof are 'reasonably related' to charges in the administrative filing and 'no material differences' between them exist, the court will entertain them." *Wu*, 863 F.3d at 1547 (quoting *Ray v. Freeman*, 626 F.2d 439, 443 (5th Cir. 1980)). "Judicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate." *Id.*

Defendant argues that Anderson did not exhaust his administrative remedies on his claim of sex discrimination based on gender stereotyping because he did not present it to the EEOC. Anderson admits, as he must, that he did not bring a gender stereotyping claim during his EEOC proceeding. However, he argues that he exhausted his administrative remedies with respect to the facts relied on his Amended Complaint, because the Department of Homeland Security and the EEOC judge have already considered the facts that Anderson relies on for his claim. This argument is premised on the assumption that a particular cause of action need not have been alleged

### C. Anderson Cannot Prove His Title VII Claim for Unlawful Retaliation.

Count II of the Amended Complaint alleges that Defendant violated Title VII by retaliating against him for engaging in protected EEO activity. Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Anderson alleges that his December 2007 AWOL charge and his subsequent demotion were undertaken in retaliation for filing his EEO complaint. Anderson relies on circumstantial evidence, arguing that retaliation is the "reasonable inference to be drawn from the timing of events." (Am. Compl. ¶ 49.)

#### 1. Anderson's Retaliation Claim Is Not Barred by Collateral Estoppel or Res Judicata.

Defendant first argues that Anderson's retaliation claim is barred by the doctrines of collateral estoppel and res judicata. (*See* D.E. #30 at 9-12.) The administrative judge in Anderson's MSPB proceeding found that Defendant's decision to charge Anderson with being AWOL was appropriate and not the result of retaliation for prior EEO activity. Anderson failed to timely challenge the administrative judge's decision in federal court after it became final. According to Defendant, the administrative judge's final decision precludes Anderson from arguing that he was retaliated against. Anderson responds that he is entitled to a trial *de novo* because this is a Title VII case. Accordingly, Anderson argues the administrative judge's decision cannot be binding on this Court.

---

in the EEOC complaint to be brought in district court, as long as it is based on the same set of facts alleged in the EEOC complaint.

There are instances in which a plaintiff may bring a new cause of action in district court even though he failed to bring the cause of action in his EEOC proceeding. *See, e.g.*, *Georgia Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004). In *Gregory*, the plaintiff's EEOC complaint alleged that she was terminated due to race and sex discrimination. The court allowed the plaintiff to bring a new claim for retaliation, reasoning that her claim for retaliation for complaining of race and sex discrimination was "inextricably intertwined with her complaints of race and sex discrimination." *Id.* at 1280. In other words, the court explained, the plaintiff "stated facts from which a reasonable EEOC investigator could have concluded that what she had complained about is retaliation." *Id. But see Woullard v. Johnson*, No. 5:03-CV-298, 2006 WL 212823, at *5 (N.D. Fla. Jan. 26, 2006) (dismissing claims for sex and religious discrimination where the plaintiff had claimed only race discrimination in his EEOC complaint, because "a claim of discrimination due to gender or religion could not be said to have been intertwined with the claim of racial discrimination"). Nevertheless, because Anderson cannot prove his claim of sex discrimination based on gender stereotyping, the Court declines to rule on the issue of whether Anderson properly exhausted his administrative remedies.

10

Title VII claims are entitled to *de novo* review. *See Chandler v. Roudebush*, 425 U.S. 840, 845 (1976) (finding that federal-sector employees are entitled to a trial *de novo* of their Title VII claims). Consequently, unreviewed administrative proceedings do not have preclusive effect on Title VII claims. *See Univ. of Tenn. v. Elliott*, 478 U.S. 788, 796 (1986) ("On the basis of our analysis in . . . *Chandler* of the language and legislative history of Title VII, we conclude that . . . Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims."); *Gergick v. Austin*, 997 F.2d 1237, 1238 (8th Cir. 1993) ("[T]he doctrine of administrative estoppel is inapplicable to Title VII claims.").

Defendant argues, however, that the Third Circuit recently rejected Anderson's argument in *Tice v. Bristol-Myers Squibb Co.*, 325 F. App'x 114 (3d Cir. 2009). In *Tice*, the plaintiff brought a Title VII claim, alleging that she was terminated based on gender. In a separate claim previously adjudicated by an administrative law judge with the Occupational Safety and Health Administration, the plaintiff argued unsuccessfully that she was fired for reporting illegal corporate activity, in violation of the Sarbanes-Oxley Act. In rejecting the plaintiff's Sarbanes-Oxley claim, the ALJ determined that Bristol-Myers had a legitimate, non-pretextual reason for firing the plaintiff: namely, that she was falsifying reports. In the plaintiff's subsequent Title VII case, she argued that she should be allowed to relitigate the reason for her termination. The district court, however, rejected her argument, "finding that *de novo* review of Title VII . . . claims does not extend to issues adjudicated in a [Sarbanes-Oxley] proceeding," *id.* at 117, and the Third Circuit affirmed, *id.* at 123.

Defendant quotes *Tice* at length, including for the proposition that "an issue decided in the course of a *non-discrimination proceeding* tangential to the plaintiff's subsequent Title VII claim" should be given preclusive effect. (Reply at 4 (quoting *Tice*, 325 F. App'x at 120).) However, Defendant omits one of the central reasons for the Third Circuit's decision: Sarbanes-Oxley statutorily prohibits collateral attacks on a final agency decision. The statute provides that "[a]n order . . . with respect to which review could have been obtained under subparagraph (A) [providing for judicial review of a final agency decision] shall not be subject to judicial review in any criminal or other civil proceeding." 49 U.S.C. § 42121(b)(4)(B). The Third Circuit spent much of its opinion in *Tice* trying to "reconcile the general presumption of *de novo* review of Title VII . . . claims in federal court with explicit language in [Sarbanes-Oxley] affirming the preclusive effect of agency rulings." *Tice*, 325 F. App'x at 117. The court held that "normal

11

preclusion principles apply here because [Sarbanes-Oxley] falls outside the general Title VII framework and *explicitly prohibits collateral attacks*." *Id.* at 123 (emphasis added).

Here, it does not appear that any statute prohibits a collateral attack on the administrative judge's decision in Anderson's MSPB proceeding. Defendant does not cite, nor can the Court find, any cases in which an unreviewed MSPB decision has been given preclusive effect in a Title VII case. Consistent with Supreme Court precedent, Anderson is entitled to *de novo* review of his Title VII claim, and Defendant's argument that the claim is barred by res judicata and collateral estoppel fails.

### 2. Anderson Cannot Establish a Prima Facie Claim of Retaliation.

A Title VII claim for retaliation that is based on circumstantial evidence is analyzed using the *McDonnell Douglas* burden-shifting model. *See Corbitt v. Home Depot U.S.A., Inc.*, 589 F.3d 1136, 1156 (11th Cir. 2009) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)). "To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). Close temporal proximity can indicate causation, but without more, the temporal proximity must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (relying on cases that held a three-month period and a four-month period insufficient to suggest causation). For example, a "three to four month disparity between [filing a complaint for harassment and an] adverse employment action is not enough." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007); *see also Curtis v. Broward County*, 292 F. App'x 882, 885 (11th Cir. 2008) (finding a temporal gap of nine months between filing an EEOC complaint and being terminated insufficient to establish a causal connection because "such a long time period severs any inference of causal connection"). Only after the plaintiff makes a prima facie case of discriminatory retaliation does the burden shift to the employer to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action. *Id.* at 1307. "If the employer offers legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation." *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997).

Defendant does not dispute that Anderson's allegations satisfy the first and second elements of a prima facie case of retaliation. However, Defendant argues that Anderson cannot satisfy the "causal relation" element because the AWOL charge was over a year after Anderson sought EEO counseling, and "Anderson offers nothing more than speculation and conjecture as to a causal connection between the two events." (D.E. #30 at 14.) Anderson does not respond directly to Defendant's argument; rather, he simply states that he "is entitled to his version of the facts being believed" and that he "is entitled to more than 'trial by affidavit.'" (Response at 13.)

Defendant is correct that Anderson cannot establish a causal relation between his EEO activity and the AWOL charge because the events are too far apart. Anderson was charged with being AWOL on December 21, 2007, but he first sought EEO counseling in July 2006 and filed his EEO complaint on December 19, 2006. In addition, Special Agent in Charge Bauer, who charged Anderson with being AWOL, knew about Anderson's EEO proceeding as early as November 29, 2006. (*See* D.E. #30 Ex. 8 at 19; D.E. #32 Ex. A at 40.) There was a gap of a year or more between Anderson's EEO activity and his adverse employment action. Given that a three-month proximity between filing an EEO complaint and suffering an adverse employment action is insufficient to create a fact issue on causation, *see Thomas*, 506 F.3d at 1364, a delay of a year or more is certainly insufficient.[4] In light of the fact that Anderson relies solely on temporal proximity to establish causation, he has failed to produce evidence from which a reasonable fact finder could find a causal connection between his EEO activity and the AWOL charge.[5] Anderson has not presented sufficient allegations or evidence to establish a prima facie claim of retaliation. Accordingly, Defendant's motion for summary judgment must be granted as to Anderson's retaliation claim.[6]

---

[4] Anderson also points to an incident on August 2, 2007 when he allegedly reported a subordinate's complaint to superiors about an e-mail ridiculing Arabs and Muslims that was being forwarded around the Air Marshal intranet. (*See* Response at 3.) However, this was more than four months before Anderson was charged with being AWOL, so it is also insufficient to create a fact issue on causation. In addition, this allegation does not appear to have been raised during Anderson's EEOC proceedings.

[5] In the Amended Complaint, Anderson seems to allege that he was charged with being AWOL *after* amending his EEO complaint to include a claim for retaliation for the incident on December 17, 2007. (*See* Am. Compl. ¶ 47.) However, as noted above, *supra* note 1, Anderson was charged with being AWOL *before* amending his EEO complaint. Therefore, the AWOL charge could not possibly be in retaliation for amending his complaint to include the retaliation claim.

[6] The Court also notes that even if Anderson could prevail on his retaliation claim, he could not obtain most of the relief he seeks. Anderson seeks back pay for the loss of pay resulting from his demotion, as well as an adjustment of the salary base against which his medical disability retirement benefits are computed. (*See* Am.

**III.   CONCLUSION**

For the reasons above, the Court finds that Anderson has not adduced sufficient allegations or evidence to support either his claim for sex discrimination based on gender stereotyping or his claim for retaliation.  Accordingly, Defendant's Motion for Summary Judgment is GRANTED.

DONE AND ORDERED in Chambers, Miami, Florida, February 8, 2010.

_____
Paul C. Huck
United States District Judge

**Copies furnished to:**
All Counsel of Record

---

Compl. at 16.)  The AWOL charge, however, is not the only reason Anderson was demoted.  As discussed above, the Department of Homeland Security demoted Anderson for his "lack of candor, failure to follow instructions, and absence without leave."  The lack-of-candor charge resulted from the incident on November 21, 2007 when Anderson made the false statement to Special Agent in Charge Bauer about having been at the Miami Airport.  In Anderson's appeal of his demotion, the MSPB upheld all of the charges against him.  Significantly, the MSPB specifically stated that "it is the lack of candor charge, not the AWOL charge, which warrants demotion."  (D.E. #30 Ex. 6 at 9.)  Anderson did not challenge the lack-of-candor charge.  In fact, he accepted responsibility for it.  (D.E. #30 Ex. 10 at 2 ("As for the first reason given, lack of candor, I accept responsibility.  I offer no excuse.").)  Because the MSPB upheld Anderson's demotion based on an admitted, non-discriminatory reason, Anderson cannot challenge his demotion.  Therefore, he could not obtain the back pay and increased retirement benefits he seeks.